J-S28015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID P. BARKER | : | |
| | : | |
| Appellant | : | No. 717 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 9, 2022
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000872-2021

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.:                **FILED: OCTOBER 24, 2022**

Appellant, David P. Barker, appeals from the judgment of sentence entered on May 9, 2022.  We affirm.

The Commonwealth charged Appellant with driving under the influence of alcohol ("DUI").  **See** Criminal Information, 8/31/21; **see also** 75 Pa.C.S.A. §§ 3802(a)(1), (b), and (c).   Prior to trial, Appellant filed a suppression motion, where he claimed that the arresting officer did not have reasonable suspicion to stop his vehicle and that, as a result, the trial court must suppress all evidence against him, "including any statements made by [Appellant] and any blood test results flowing from the illegal detention and arrest of [Appellant]."  Appellant's Suppression Motion, 10/25/21, at 10.

On January 11, 2022, the trial court held a hearing on Appellant's suppression motion.  During this hearing, the Commonwealth presented the testimony of Gettysburg Borough Police Officer Shannon Hilliard.   Officer

Hilliard testified that, at approximately 11:30 p.m. on March 5, 2021, he was on duty and driving a marked patrol car, when he witnessed a vehicle that "appeared to be traveling a little fast" on the road. N.T. Suppression Hearing, 1/11/22, at 7. Officer Hilliard observed the vehicle drive further down the road and then turn into the parking lot of a doctor's office along West High Street. *Id.* at 8.

As Officer Hilliard testified, "[t]he vehicle backed [into a] parking space [in the doctor's office parking lot]. And I pulled in and activated my emergency lights and siren and initiated a traffic stop." *Id.* Officer Hilliard testified that he initiated the vehicle stop because "there could be a possible trespass." *Id.* at 8 and 11. He further testified that a "three-foot-by-two-foot" sign was posted at the entrance to the parking lot, which read:

> PATIENT PARKING ONLY
> Violators Will Be Fined
> By Boro Police and or Towed
> 75 PA. C. S. A. Section 3353

*See id.* at 19; *see also* Commonwealth's Exhibit 1.

He also testified:

> it was 11:30 [p.m.] at night. I know that [the] office is not open. That's outside the normal business hours. There's no light illuminated indicating the business was open. So, I was aware that . . . [t]here would be no patients in that parking lot considering the doctor's office is closed.

N.T. Suppression Hearing, 1/11/22, at 11.

During cross-examination, Officer Hilliard testified that, at the time he activated his lights and siren: he did not know whether "the driver or owner

of the vehicle had consent to park in that parking lot;" he did not know whether the "driver of the vehicle or owner of the vehicle was a patient at that facility;" he did not know whether Appellant's vehicle "was in drive or in park;" and, he "did not know anything about the driver or the vehicle." *Id.* at 14-16.

The trial court denied Appellant's suppression motion and, following a stipulated bench trial, the court found Appellant guilty of DUI (second offense) and DUI (high rate of alcohol).[1] On May 9, 2022, the trial court sentenced Appellant to serve six months of probation for his convictions.

Appellant filed a timely notice of appeal. He raises one claim to this Court:

> Did the suppression court err when it found Officer Hilliard had reasonable suspicion to stop/detain Appellant for trespassing?

Appellant's Brief at 4.

Our standard of review for an order denying a motion to suppress is as follows.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and (b), respectively.

legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law [reached by the trial court] are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (quotation marks and citations omitted).

When a police officer forcibly stops a motor vehicle, a "seizure" has occurred within the meaning of the Fourth Amendment and constitutional protections against unreasonable searches and detentions come into play. *Whren v. United States*, 517 U.S. 806, 809–810 (1996). 75 Pa.C.S.A. § 6308(b) states:

> (b) Authority of police officer.—Whenever a police officer . . . has reasonable suspicion that a violation of [the Vehicle Code] is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

*Commonwealth v Feczko*, 10 A.3d 1285, 1287 (Pa. Super. 2010) (*en banc*) (quoting 75 Pa.C.S.A. § 6308(b)), *appeal denied*, 25 A.3d 327 (Pa. 2011).

Our Supreme Court has explained:

> Section 6308(b) allows a police officer to conduct a vehicle stop if he has reasonable suspicion to believe that a violation of the Motor Vehicle Code is occurring or has occurred. . . . Reasonable suspicion [is defined] as follows:
>
> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest,

- 4 -

and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

. . .

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

**Commonwealth v. Holmes**, 14 A.3d 89, 95-96 (Pa. 2011) (citations, footnotes, and some quotation marks omitted).

In this case, Officer Hilliard stopped Appellant's vehicle for a suspected violation of 75 Pa.C.S.A. § 3353. In relevant part, Section 3353 of the Vehicle Code declares:

(b) Unattended vehicle on private property –

(1) No person shall park or leave unattended a vehicle on private property without the consent of the owner or other person in control or possession of the property except in the case of emergency or disablement of the vehicle, in which case the operator shall arrange for the removal of the vehicle as soon as possible.

(2) The provisions of this subsection shall not apply to private parking lots unless such lots are posted to notify the public of any parking restrictions and the operator of

the vehicle violates such posted restrictions. For the purposes of this section "private parking lot" means a parking lot open to the public or used for parking without charge; or a parking lot used for parking with charge. The department shall define by regulation what constitutes adequate posting for public notice.

. . .

(e) Penalty.--Any person violating any provision of this section is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of not more than $50.

75 Pa.C.S.A. § 3353.[2, 3]

_____

[2] As this Court has held:

Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. . . . Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation.

*Feczko*, 10 A.3d at 1292.

On appeal, Appellant does not claim the trial court erred when it concluded that Officer Hilliard needed reasonable suspicion – and not probable cause – to initiate the traffic stop. Moreover, we note that reasonable suspicion is the proper standard in the case at bar since further investigation was necessary to determine whether Appellant was actually in violation of Section 3353(b). For example, Appellant would not have been in violation of Section 3353(b) if: Appellant were a patient at the office; had the consent of the owner to park in the lot; or, was experiencing an "emergency or disablement of the vehicle." *See* 75 Pa.C.S.A. § 3353(b). However, the only way Officer Hilliard would have been able to determine if Appellant were exempted from application of Section 3353(b) is by investigating the matter after the stop.

[3] Although Section 3353(b) is entitled "[u]nattended vehicle on private property," the statute clearly prohibits the "parking" of a vehicle on private property without the consent of the owner; and, under the Vehicle Code,
*(Footnote Continued Next Page)*

During the suppression hearing, Officer Hilliard testified that he observed Appellant's vehicle turn into a doctor's office parking lot at 11:30 p.m. At that time, "the doctor's office [was] closed" and there were no lights on the building that would have indicated that the business was open. N.T. Suppression Hearing, 1/11/22, at 7-11. Officer Hilliard also testified that a "three-foot-by-two-foot" sign was posted at the entrance to the parking lot, which read:

> PATIENT PARKING ONLY
> Violators Will Be Fined
> By Boro Police and or Towed
> 75 PA. C. S. A. Section 3353

*See id.* at 19; *see also* Commonwealth's Exhibit 1.

Officer Hilliard testified that he waited until Appellant "backed in to [a] parking space" in the lot and, when he "witnessed the vehicle park in the parking lot," Officer Hilliard "pulled in and activated [his] emergency lights and siren and initiated a traffic stop." N.T. Suppression Hearing, 1/11/22, at 8.

We conclude that, when Officer Hilliard activated his emergency lights and seized Appellant, Officer Hilliard possessed the requisite reasonable suspicion to believe that Appellant may have been in violation of Section

---

"parking" a vehicle can occur whether the vehicle is "occupied or not." *See* 75 Pa.C.S.A. § 102 (defining the term "park" or "parking" as: "(1) When permitted, means the temporary storing of a vehicle, whether occupied or not, off the roadway. (2) When prohibited, means the halting of a vehicle, whether occupied or not, except momentarily for the purpose of and while actually engaged in loading or unloading property or passengers.").

3353(b) of the Vehicle Code. To be sure, Section 3353(b)(1) provides that, with certain exceptions, a person is prohibited from parking a vehicle on private property without the consent of the owner. Section 3353(b)(2) further declares that the prohibition applies to private parking lots if "such lots are posted to notify the public of any parking restrictions and the operator of the vehicle violates such posted restrictions." 75 Pa.C.S.A. § 3353(b).

In this case, the doctor's office parking lot was posted with a sign that declared: "PATIENT PARKING ONLY." Further, at the time Officer Hilliard initiated the traffic stop, Officer Hilliard possessed specific and articulable facts that Appellant was violating the posted restriction, since: Appellant "backed [his vehicle] in to [a] parking space" in the lot, at 11:30 p.m. at night, when the doctor's office was closed, with "no light illuminated indicating the business was open," and Officer Hilliard was "aware that . . . [t]here would be no patients in that parking lot considering the doctor's office [was] closed." N.T. Suppression Hearing, 1/11/22, at 7-11; Commonwealth's Exhibit 1; *see also* Trial Court Opinion, 1/25/22, at 9. Therefore, at the time of the stop, Officer Hilliard possessed reasonable suspicion that Appellant parked his vehicle in violation of the posted restrictions in the parking lot and, thus, may have been in violation of Section 3353(b).

On appeal, Appellant argues that Officer Hilliard did not have reasonable suspicion to initiate the stop since, at the time he initiated the vehicle stop, he did not know: "whether the vehicle was in drive or park;" whether "the owner had given consent to Appellant . . . to park in the lot;" whether

Appellant was a patient; or, whether Appellant was "experiencing an emergency or disablement." ***See*** Appellant's Brief at 20-23.

While Appellant is correct in his observations, the fact that Appellant's actions could have been wholly innocent – and not violative of Section 3353(b) – does not override the specific and articulable facts that led Officer Hilliard to suspect that criminal activity was afoot. ***See***, ***e.g.***, ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1251 (Pa. Super. 2021) ("certainty about individual factors has never been a prerequisite for reasonable suspicion. It is well-settled that to justify their decision to stop and briefly detain an individual, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability") (quotation marks, citations, and brackets omitted); ***Commonwealth v. Rogers***, 849 A.2d 1185, 1190 (Pa. 2004) ("reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further. Rather, the test is what it purports to be – it requires a suspicion of criminal conduct that is reasonable based upon the facts of the matter") (citations omitted). Certainly, as the trial court ably summarized, under the totality of the circumstances, Officer Hilliard possessed specific and articulable facts suggesting that Appellant violated Section 3353(b):

> The parking lot of the doctor's office was closed to unauthorized visitor[ parking], as indicated by the "Patient Parking Only" sign in the parking lot. Officer Hilliard therefore reasonably believed [Appellant] was not authorized to park in the parking lot because [Appellant] did not appear to be a patient at the doctor's office. The lateness of the hour made

it highly unlikely that the doctor's office was open for business and that [Appellant] was visiting the practice for medical treatment.

Trial Court Opinion, 1/25/22, at 9.

We agree with the trial court and conclude that the Appellant's claim on appeal thus fails.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/24/2022</u>

---

[4] Appellant also claims that "the sign provided inadequate notice by failing to comply with parking sign regulations." Appellant's Brief at 18. Whether the sign did or did not "comply with parking sign regulations" is only relevant to the issue of whether Appellant, in fact, violated Section 3353(b). It is not relevant to the issue of whether Officer Hilliard possessed reasonable suspicion to believe that Appellant violated Section 3353(b).